UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JASON REARDON, ) | |
| ) | |
| Plaintiff, ) | |
| v.            ) | No.: 17-cv-3138-MMM |
| ) | |
| PAT SMITH and CAROL MANSFIELD, ) | |
| ) | |
| Defendants. ) | |

### ORDER

Plaintiff, proceeding *pro se*, asserted a § 1983 deliberate indifference claim against Defendant Nurses Pat Smith and Carol Mansfield at the Taylorville Correctional Center ("Taylorville"). Plaintiff has filed a motion for summary judgment [ECF 47], to which Defendants have responded [ECF 50]. Defendants have filed their own motion for summary judgment [ECF 53] to which Plaintiff asserted his summary judgment motion as his response. Defendants filed a reply at [ECF 58].

Defendants assert that Plaintiff's motion for summary judgment must be denied, in part, because he did not provide a statement of undisputed material facts ("UMF") as required by CDIL-LR 7.1(D)(2)(b). The Court notes that Plaintiff's motion for summary judgment does not contain an UMF section as required, and that the cited rule provides that the "failure to respond to any numbered fact will be deemed an admission of the fact." While a failure to respond may be deemed an admission, the Court must consider the merits even if the non-moving party files no response at all. *See Boyd v. Habeck*, 2013 WL 518966 *1 (E.D. Wis. Feb. 12, 2013) (summary judgment not to be granted by default). Here, Plaintiff filed an articulate response, with numbered paragraphs though none are specifically identified as UMF. The Court finds this sufficient and has given Plaintiff's motion for summary judgment full consideration. For the

1

reasons indicated herein, the Court finds that contested issues of material fact remain and, accordingly, the Parties' Motions for Summary Judgment [ECF 47] and [ECF 53] are DENIED.

## MATERIAL FACTS

Plaintiff has submitted a sworn affidavit in support of his motion for summary judgment. Plaintiff attests to a history of spontaneous rupture of his eardrums, resulting in hearing loss. On June 6, 2016, at approximately 11:20 p.m., Plaintiff felt a pop in his right ear and began experiencing a yellow mucous discharge which, he asserts, are symptoms of a ruptured eardrum. Plaintiff immediately informed the unit officer, not a party, who called the healthcare unit. The Officer was told that Plaintiff could not go to the healthcare unit at that time, but was to report to nursing sick call the following morning at 5:45 a.m. Plaintiff indicates that he had a pain-filled sleepless nights with his ear discharging copious amounts of mucous.

Plaintiff reported to sick call at 5:45 a.m., as instructed. He was seen by Defendant Nurse Pat Smith, who undertook a physical exam. Plaintiff indicates that Defendant Nurse Mansfield was present during the exam, recording the findings. Plaintiff told Defendants he believed his eardrum had ruptured as he had a history of such spontaneous occurrences. He showed them a washcloth that he had held to his ear and which had collected mucous and "some blood." He told Defendant Smith that his pain was a "10" on a scale of "1-10." Defendant Smith reportedly scoffed at this, and Defendants recorded Plaintiff's pain level as a "6." Defendant Smith told Plaintiff that his symptoms were likely caused by allergies. She prescribed acetaminophen and over-the-counter cold and allergy tablets and terminated the encounter.

Plaintiff has provided a copy of the June 7, 2016 *Offender Outpatient Progress Notes Earache/Earwax Impaction* form signed by Defendant Mansfield. This form has sections for healthcare personnel to write exam notes, and contains protocols listing those symptoms which

2

require referral to a physician and those which do not. The Note indicates that Plaintiff reported a history of recent upper respiratory infection as well as a three-day history of right ear pain with drainage and hearing loss. Defendant Smith noted after examination, that Plaintiff had bulging eardrums as well as enlarged lymph nodes in the neck. Defendant Mansfield recorded Plaintiff's pain level as a "6" and checked "no" to the question of whether Plaintiff had a history of earache, ear infection or ear surgery. [ECF 47-2 p.2].

> There is a section on the protocol form which instructs staff to "Refer to MD" if:
>
> redness with fever over 101°, *acute pain*, *drainage*, or swelling, *hearing loss*, inability to visualize tympanic membranes [eardrums], excessive earwax build-up requiring medication or manual extraction, *neck node enlargement*/pain or symptoms that failed to respond to treatment protocol. [Emphasis has been placed on those symptoms which Plaintiff claims he related to Defendants.]

Plaintiff alleges that, as he exhibited many of the symptoms on the form, the protocol should have been followed and he should have been referred to a physician.

Plaintiff claims that later that same day, June 7, 2016, his left ear also began draining mucous. Plaintiff was unable to sleep that night and experienced deterioration of the hearing in both ears. On June 8, 2016, Plaintiff noted a milky film over both of his eyes. On June 9, 2016, he went to the healthcare unit due to these symptoms. He claims that he showed Defendants a washcloth soaked with mucous drainage from his ears. Despite this, they refused to examine or treat him, claiming he had to wait three days between nursing sick call visits.

Later that day, Plaintiff's mother, Jan Chase, called the prison and spoke with Nurse Galvan, not a party. Nurse Galvin called Plaintiff to the health care unit where he was examined by Nurse Randy Emerson. Nurse Emerson allegedly confirmed that Plaintiff's eardrum had ruptured and allegedly stated that "any person with common sense would know that if your ears are draining blood and mucus that you need to see a doctor." Nurse Emerson called an off-site

physician who gave orders for antibiotic eardrops. Plaintiff was seen the following day by Ralph Gauen, M.D. who prescribed oral antibiotics in addition to the ear drops.

Plaintiff has provided a copy of the June 9, 2016 *Offender Outpatient Progress Notes* form completed by Nurse Emerson. It documents a history of bilateral ear pain with drainage and hearing loss. It indicates that Plaintiff had a past history of earache, ear infection or ear surgery but no recent upper respiratory infection. It also noted that the tympanic membranes were white, possibly signifying a rupture of the eardrum. [ECF 47-2 p. 3]. The list of symptoms under the "Refer to M.D." portion of the form are circled, indicating that they required follow-up by a physician.

Plaintiff claims that the mucous discharge from his ears continued for another week and that he continues to have tinnitus (ringing in his ears), and hearing loss. It is unclear, however, whether the tinnitus and hearing loss were new symptoms or whether they pre-existed and were exacerbated by the alleged delay in treatment and, if so, whether this exacerbation was temporary or permanent in nature.

Plaintiff asserts that his pain, inability to sleep due to pain, drainage, enlarged neck nodes, bulging eardrums and hearing loss represented an obvious, objectively serious medical need. He asserts that, despite this, and despite the protocols outlined on the form, Defendants did not refer him to a physician. He asserts, further, that he was left in pain which could have been easily treated, but that Defendants persisted in a course which they knew to be ineffective.

It is Plaintiff's position that he should have been seen on the night of June 6, when his symptoms first presented, rather than waiting until 6:15 a.m. on June 7. Plaintiff has provided a work sign-in sheet which establishes that Defendants Smith and Mansfield had signed-in and were working the overnight shift from June 6 through the morning of June 7, 2016. He claims

that, as they were on the premises, they should have allowed him to report to the healthcare unit or, barring that, should have come to see him.

Plaintiff asserts, further, that Defendants violated Institutional Directives 04.03.103 (e)(1) and (2) and 04.03.121 (f)(3). The former requires that healthcare personnel make a determination as to an inmate's need for treatment and, if necessary, go to the offender to evaluate his problem. The latter requires that if a patient, as in this case, is seen by someone other than a physician, physician's assistant, nurse practitioner, or dentist, that individual is to follow the approved treatment protocols delineated on the *Offender Outpatient Progress Notes* form. [ECF 47-7 p. 4-8].

Defendant Smith has provided a sworn affidavit denying that she was deliberately indifferent in her treatment of Plaintiff. She attests that Plaintiff did not present with an emergency condition requiring treatment on June 6, 2016. Defendant does not, however, identify the basis for this belief. She appears to concede that she was on the premises on June 6, 2016, but neither confirms nor denies receiving the phone call from the Unit Officer. As a result, she does not reveal the specific symptoms which were relayed to her, if any. Defendant, therefore, fails to establish that she had first-hand knowledge of Plaintiff's condition on June 6, 2016 and was able to form an opinion as to whether it represented an emergency.

Defendant Smith attests that when she evaluated Plaintiff on June 7, 2016, he complained "of an ache in his right ear." The *Offender Outpatient Progress Notes* of that date, however, documents that Plaintiff complained of a three-day history of right ear pain with drainage and hearing loss, not merely an earache. She also attests that her examination on that date was positive for bulging of Plaintiff's "lymphatic membranes". The Court assumes that Defendant is actually referring to Plaintiff's tympanic membranes. Despite Plaintiff's complaints, Defendant

determined that Plaintiff did not have drainage in his ear, though he had drainage in his nose and throat.  She also determined that Plaintiff did not had hearing loss, based on her "finger rub hearing test," not otherwise explained or quantified.  While Defendant appears to contest Plaintiff's self-reported symptoms, she does not provide any reason for apparently discounting them.

Defendant Smith attests that it was not necessary to refer Plaintiff to a physician as a bulging eardrum is not especially significant unless accompanied by fever, loss of hearing or drainage from the ear.  Plaintiff, of course, has specifically alleged that he had loss of hearing and copious drainage from the ear.  He has also provided the affidavit of his cellmate, Michael Stamm, who corroborates this.  [ECF 47-1 p. 10].

Defendant offers the opinion that 80% of adult ear infections resolve without medication, and it was reasonable to expect that Plaintiff's symptoms would resolve without antibiotic treatment.  She, in fact, inexplicably attests that "an inner ear infection may be a case of inflammation, rather than an actual infection…," providing no explanation for the incongruous statement that an inner ear infection might not be an infection.

Defendants have filed a reply in support of their motion for summary in which they assert that they have sufficiently documented their understanding as to the appropriate use of antibiotics in treating ear infections.  The documentation they provide, however, is contradictory and far from clear.  Defendants assert in their summary judgment motion that antibiotics are used to treat bacterial infections of the ear but not viral infections.  This could reasonably be interpreted to mean that Defendants believed that Plaintiff had a viral infection which did not require antibiotic treatment.  In their response to summary judgment, however, Defendants assert the opposite, claiming that antibiotics are appropriate to treat viral infection but not bacterial

infections.  [ECF 50 § 13-16].  It is not clear whether Defendants believed Plaintiff's ear infection was viral or bacterial and whether it was reasonable to assume that he would, or would not, need antibiotic treatment.

As noted, Plaintiff claims that Defendants refused to treat him on June 9, 2016, at the 6:45 a.m. nursing sick call. Defendant Smith responds with a bare statement denying that she refused Plaintiff treatment that day.  This response is not particularly illuminating, as it is not clear whether Defendant asserts that Plaintiff did not present for treatment that morning, that he presented but did not need treatment or that he presented and she provided treatment.

Defendant also fails to address Plaintiff's claim that he related to her a history of spontaneous rupture of the eardrums.  Defendants did not record this on the June 7, 2016 *Offender Outpatient Progress Notes* and, in fact, indicated that Plaintiff had no such prior history.  It strains credulity to believe that Plaintiff, having suffered prior incidents, would not have informed nursing staff as to why he was so certain that his eardrum had ruptured.  This omission from the June 7, 2016 record is further highlighted by the June 9, 2016 record of Nurse Emerson which documented this history.

Defendant Mansfield, too, has provided a sworn affidavit attesting that Plaintiff's June 7, 2016, report of an earache did not warrant referral to a physician.  Defendant opines that, based on her experience, "a bulging eardrum without a fever or an objective finding of a loss of hearing, or drainage from the ear is not indicative of a condition that would require referral to a medical doctor…"  Defendant does not, however, indicate the depth of her first-hand experience with bulging eardrums.  She offers no testimony as to the number of patients she has seen with this condition, the number who required antibiotic treatment, the number who healed on their own and the number who suffered complications for the lack of antibiotic treatment.

7

In addition, as previously noted, Defendants have been unclear as to whether they believed Plaintiff had a viral or bacterial infection and whether antibiotic treatment would have been warranted, or even effective, if provided.

Defendant Mansfield also summarily denies that she refused to provide Plaintiff treatment on June 9, 2016. This bare denial is of questionable significance as Defendant Mansfield neither denies that Plaintiff presented for treatment that morning, nor claims that she treated him.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 7477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once a properly supported motion for summary judgment is filed, the burden shifts to the non-moving party to demonstrate with specific evidence that a triable issue of fact remains for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). The party opposing summary judgment "must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Finally, a scintilla of evidence in support of the non-movant's

position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## DELIBERATE INDIFFERENCE STANDARD

It is well established that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment. *Snipes v DeTella*, 95 F.3d 586, 590 (7th Cir 1996), citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim does not rise to the level of an Eighth Amendment issue, however, unless the punishment is "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996). The defendant must have acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). That is, that he "knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno v. Daley*, 414 F.3d 645, 653.

A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes*, 95 F.3d at 591, citing *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974); *Cannon v. Thomas*, 419 U.S. 813 (1974). However, an "inexplicable delay in treatment which serves no penological interest" which "exacerbated the injury or unnecessarily prolonged pain" is actionable. A plaintiff cannot prevail on a claim of delay in treatment, however, without evidence that the delay exacerbated the injury or unnecessarily prolonged pain. *Williams v. Liefer,* 491 F.3d 710, 714-15 (7th Cir. 2007) (plaintiff must provide verifiable medical evidence that the delay in

treatment caused injury). In addition, a medical provider may be deliberately indifferent where he persists in a course of treatment known to be ineffective, *Petties v. Carter*, 836 F.3d 772, 730 (7th Cir. 2016), *as amended* (Aug. 25, 2016) (internal citations omitted).

## ANALYSIS

Defendants assert that there is no evidence to suggest that the Defendant Nurses were aware of Plaintiff's complaints the night of June 6, 2016. Plaintiff, however, attests that he told the Unit Officer who called the healthcare unit. He has also provided documentary evidence that both Defendants were on duty that evening. As such, he has identified a material issue which Defendants were free to rebut. Defendants have provided affidavits and could have attested that they received no call from the Unit Officer. They could, also, have attested that they spoke with the Officer and the symptoms which he described did not require immediate treatment. Their affidavits are silent on this subject and fail to substantiate that there is no material factual dispute as to this claim.

Defendants also assert that Plaintiff cannot establish that they were aware on June 7 and June 9, 2016 that he suffered a substantial risk of serious harm. They cite the professional judgment standard which applies to the Nurse Defendants in this case. *Chavez v. Cady*, 207 F.3d 901, 905 (7th Cir. 2000). Under this standard, a medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under the circumstances. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Plaintiff, however, asserts that when he presented on June 7, 2016, he complained of pain and hearing loss and showed Defendants a mucous and blood-stained washcloth. He also attests that he told Defendants that, based on past experience, he believed his eardrum had ruptured. He claims that despite this, and the instructions on the protocol sheet, they

refused to refer him to a physician. This is sufficient to establish a contested issue of material fact regarding the complaints of June 7, 2016.

On June 9, 2016, Plaintiff allegedly reported to nursing sick call where Defendants refused to treat him though later that day, another nurse determined that Plaintiff's eardrum was ruptured. In response to this allegation, Defendants have made only vague attestations that they did not refuse care on that date. As noted, they do not assert that Plaintiff did not present that morning, or that he presented and did not need care or, that they provided him care. Defendants' affidavits are, for all practical purposes, silent in response to this allegation. As a result, there remains a disputed material issue of fact as to whether Defendants acted with deliberate indifference on June 9, 2016.

Lastly, Defendants assert that Plaintiff did not sustain injury due to an alleged delay on their parts. Plaintiff, however, claims to have tinnitus and loss of hearing in his ears. As previously noted, Plaintiff's testimony on this issue is somewhat murky. It is unclear whether he claims to have suffered the symptoms only after the events in June 2016, or whether they were pre-existing and exacerbated by the events. Regardless, Plaintiff does claim injury. Furthermore, the mere allegations that he unnecessarily suffered pain which was easily treatable is evidence of a compensable injury. *Petties*, 836 F.3d at 730-31.

The Court finds that there remains a material issue of fact as to whether the symptoms with which Plaintiff presented should have caused Defendants to provide care, or different care, on June 6, June 7 and June 9, 2016. The parties' conflicting testimony raises a material issue of fact not to be disposed of at summary judgment. *See Anderson,* 477 U.S. at 255 ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary

judgment or for a directed verdict"). The parties' motions for summary judgment are DENIED. This case shall proceed.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's Motion for Summary Judgment [ECF 47] and Defendants' Motion for Summary Judgment [ECF 53] are DENIED.

2) As it appears that the matter is ready for trial, the parties are requested, within 21 days, to identify any outstanding matters and to suggest a timeframe for trial.

 8/19/2019                            s/Michael M. Mihm 
ENTERED                                  MICHAEL M. MIHM
                                           UNITED STATES DISTRICT JUDGE